**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | |
|---|---|
| **KNOX COUNTY, TENNESSEE,** )<br>)<br>   **Plaintiff,** )<br>)<br>v. )<br>)<br>**B.C., the Student, and** )<br>**K.C., the Parent,** )<br>)<br>)<br>   **Defendants.** ) | No. _____ |

**COMPLAINT**

Knox County, Tennessee, by and through its counsel, submits this Complaint Petition for Judicial Review of the adverse administrative decision by the State of Tennessee Department of State, Administrative Procedures Division pursuant to 20 U.S.C. § 1415(i)(2)(A).

**PARTIES, JURISDICTION, VENUE**

1. Knox County, Tennessee[1] is a government subdivision of the State of Tennessee, duly authorized to administer public schools within Knox County.

2. B.C. is a minor and resides with his parents K.C. and N.C. in Knox County, Tennessee. B.C. is a citizen of the United States and a minor. Because he is a minor, and consistent with Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, B.C. and his parents will be identified by their initials.

3. This is an action for judicial review pursuant to Tenn. Code Ann. § 4-5-322 which is an appeal from the adverse decision in an administrative proceeding pursuant to 20 U.S.C. § 1415(i)(2)(A). This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Knox County Board of Education (a political subdivision of Knox County, Tennessee) operates the local education agency of the county.

1

4.     Venue is proper under 28 U.S.C. §1391, because the alleged acts in this lawsuit occurred within this judicial district and/or because Plaintiff and Defendants "reside" in this judicial district.

**PROCEDURAL HISTORY**

5.     This case involves a due process complaint that was brought by K.C. on behalf of her minor son, B.C.

6.     On May 30, 2025, Defendant K.C. filed, on behalf of their minor son, B.C., a Due Process Hearing Request, pursuant to the Individuals with Disabilities Act, disagreeing with the placement that KCS proposed for B.C.'s sixth grade year.

7.     Due to B.C.'s significant self-injurious behaviors and the fact that his behavior impedes his own learning and the learning of others, KCS proposed that B.C. receive a full school day of direct special education instruction in reading, math, adaptive skills, prevocational skills and social emotional skills along with speech language therapy and autism support services in the special education setting at Ridgedale Alternative School. Ridgedale is a special day school within the KCS school system which could provide extensive behavioral and communication supports due to its level of staffing and behavioral supports imbedded in the programming.

8.     B.C. argued that B.C.'s proposed IEP services could be implemented at B.C.'s zoned middle school, Gibbs Middle School with supports and services such as "ABA therapy" and a "1:1 aide," and thus B.C.'s least restrictive environment ("LRE") is Gibbs Middle School. B.C. further argued that "KCS's failure to take reasonable, non-discriminatory action to address the behavior was deliberate indifference," under the Americans with Disabilities Act and Section 504.

9.     An administrative hearing was held October 21-23, 2025 in Knoxville, Tennessee before Administrative Law Judge ("ALJ") Steve R. Darnell, assigned by the Secretary of State, Administrative Procedures Division.

10. The administrative hearing involved testimony from numerous KCS staff and expert witnesses called on behalf of both the Defendants and the Plaintiff.

11. On November 6, 2025, ALJ Darnell issued a Final Order. A copy of the Final Order is attached hereto as Exhibit 1. The ALJ found in favor of B.C. and held that KCS had violated the IDEA, as well as Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. KCS appeals from the adverse judgment of the ALJ and asserts that KCS developed an IEP that would provide B.C. with FAPE in his LRE.

**FACTS**

12. B.C. enrolled at Gibbs Elementary in August 2021 during the 2021-2022 school year for Second Grade. Prior to that, B.C. attended Peer Academy, a private school for children with disabilities.

13. B.C. was made eligible for special education services as a student with autism on September 22, 2021. However, B.C. did not begin actually attending school until January 2022. Thereafter, B.C. attended school only 2-3 days a week during both second and third grade.

14. B.C. has engaged in significant self-injurious behaviors of hitting his head and face either with his fists or by hitting his head against hard surfaces since he was approximately 4-5 years old.[2] This behavior occurs at home *and* at school.

15. B.C. *also* engages in physical aggression towards staff. This results in B.C. throwing hard objects (AAC device and/or water bottles) at them (on occasion this had led to other students nearly being struck) along with kicking and punching at staff with the intent of striking them.[3]

---

[2] In addition to the dozens of times KCs has documented bruising or bleeding on B.C's head due to his behaviors, B.C. has a permanent mark on his forehead and nose from hitting himself with his hands and on hard surfaces. Additionally, B.C. often has bruises on his own hands from the way he hits himself. When staff intervene, such as by putting their hand between his head and the wall/floor, the hit is hard enough that they have bruises on their hands.

[3] KCS staff have been bruised by B.C. during these episodes. One incident resulted in a staff member breaking her arm.

3

16. Additionally, B.C. often demonstrates inappropriate behavior towards staff and students. He will lightly headbutt staff and students and will get face to face with other students and scream in their face. With staff he will attempt to touch breasts and groin areas.

17. KCS has identified numerous setting events and antecedents to these behaviors i.e. situations when these behaviors are *likely* to occur. These include: Demands (such as independent work, ELA assignments, being directed to stay in one place) being placed upon him, non-preferred academic work, transition from home to school, any morning routine, loud stimulating environments with a large number of people, bright lights, B.C. feeling ill or uncomfortable, other students leaving the class early, and denials of requests that are simply not available at school, i.e. being told he cannot go home early.

18. Upon enrollment, B.C. was placed in the Comprehensive Development Classroom ("CDC") at Gibbs Elementary. That classroom was staffed by a special education teacher and two teaching assistants.[4]

19. As B.C. is largely non-verbal, KCS developed several Individual Education Programs for B.C. that included speech language therapy by a licensed Speech Language Pathologist ("SLP") in the classroom and the provision of an Augmentative and Alternative Communication ("AAC") device to assist in his communication.[5]

20. Upon enrollment, KCS began sending district Behavior support staff including a Behavior Liaison and a Restorative Interventionist. KCS also added another teaching assistant to the CDC classroom at Gibbs Elementary School to support B.C. in both the special education

---

[4] The CDC classroom uses curriculum that is aligned with Tennessee general education standards but provides for modified content in all academic areas and an ability to teach adaptive and life skills that are not part of the general education curriculum.

[5] All classroom staff that provided services to B.C. during 2nd, 3rd, 4th and 5th grade, including the teaching assistants who worked directly with B.C., were trained in the use of B.C.'s AAC device including specific formal training and modelling/demonstrations in the classroom.

classroom and the general education classroom.

21. KCS obtained permission for a Functional Behavior Assessment ("FBA") in March 2022. The FBA was completed by a Board Certified Behavior Analyst ("BCBA") in April 2022.

22. A Behavior Intervention Plan ("BIP") was developed and agreed to by K.C. on May 19, 2022. B.C.'s BIP was updated four times after it was first introduced: October 18, 2022, October 2, 2023, August 27, 2024, and finally in March 27, 2025 after a new FBA had been conducted.

23. The 2023-2024 school year, (4th grade) is the first school year where B.C. attended Gibbs Elementary on a full-time basis for the entirety of the school year. The IEP team met to develop B.C.'s annual IEP for 4th grade on October 2, 2023. There was a significant change made by the IEP team to *all* of the goals during B.C.'s 4th grade annual IEP team meeting on October 2, 2023 in anticipation of his full time attendance allowing for more progress to be made.

24. The CDC classroom at Gibbs Elementary School provided sensory supports, a reinforcement system including a choice board and token system, a daily schedule, a visual schedule, autism support, a designated break area, individualized work systems, dedicated teaching assistant within close proximity at all times, preferential seating, and the instructional/environmental strategies specified in the BIPs.

25. Despite these efforts, B.C.'s behavior dramatically increased in both frequency and intensity. During 4th grade, B.C.'s self injurious behaviors rose to the level where on four separate occasions B.C. head banging resulted in his head beginning to bleed while at school.

26. As a result and for his safety, in accordance with SEBSA, B.C. was physically restrained by KCS staff 117 times during his fourth-grade year, SY 2023-24. The team met to discuss B.C.'s behaviors 18 times during the 4th grade school year.

27. Beginning in 5th grade, B.C.'s private applied behavior analysis ("ABA") therapy providers attended school with him approximately 20 hours per week.

28. B.C. was physically restrained 22 times between August 1, 2024 and October 31, 2024 (Fall semester of B.C.'s 5th grade year). During that time period, B.C. hit his head hard enough to result in bleeding in seven separate incidents and the school nurse sending home a report of possible head injury due to concerns B.C. might have a concussion.

29. Due to this significant increase in injuries to himself and physical aggression towards others, Gibbs Elementary School staff opted to lessen the educational rigor placed on him in the classroom setting. As a result, the data shows that the *frequency* of the behaviors remained stable but staff were able to keep some of the intensity of the behaviors lower so that restraints were not always necessary.

30. A comprehensive psychoeducational re-evaluation, speech language evaluation, Assistive Technology evaluation, and new Functional Behavior Assessment were conducted for B.C. and finalized on February 5, 2025.

31. K.C. attended IEP meetings on February 5, 2025, February 27, 2025, March 7, 2025, and March 27, 2025, May 15, 2025, accompanied by counsel, to revise the IEP and review KCS's proposed BIP.

32. At the May 15, 2025 meeting the team discussed the intensity of B.C.'s behavior, the fact that the high intensity behaviors were a *daily* occurrence, the increased rigor of middle school in general and how that would impact the behaviors, the largeness and chaotic nature of the middle school hallways and classrooms, concerns regarding potential serious injury, the level of disruption B.C. could potentially cause at Gibbs Middle School, Ridgedale's ability to immediately respond to behavior escalations thereby lessening the chances for creating a behavior cycle, and that despite the supports already provided his behavior was not improving. KCS staff unanimously

6

Case 3:26-cv-00003-TAV-DCP    Document 1    Filed 01/05/26    Page 6 of 11    PageID #: 6

agreed that Ridgedale would be able to meet B.C.'s behavioral and communication needs and proposed placement at Ridgedale.

33. K.C. disagreed and filed a special education Due Process Hearing Request. During the pendency of the hearing, B.C. began 6th grade at his zoned middle school, Gibbs Middle School.

34. Gibbs Middle School took numerous steps to support B.C. including moving classrooms, training additional staff in restraint and behavior techniques, engaging in numerous student specific trainings for all staff working with B.C., assigning an aide to B.C., conducting trainings on B.C.'s AAC device and BIP, adding additional classroom staff and holding weekly collaborative meetings between the staff.

35. Despite all of these supports, B.C. was restrained over 60 times between the beginning of 2025-2026 school year and the hearing held on October 21, 2025. This is impeding his own learning and is disrupting the education of other students at Gibbs Middle School.[6] Due to other staff having to leave their classrooms to support B.C., they have lost over **131 hours** of instructional time with their students, which is the equivalent of 3.5 weeks of school.

36. A hearing on the matter was held on October 21-23, 2025. ALJ Darnell issued his final order November 6, 2025. At the hearing, KCS staff from Gibbs Elementary School, Gibbs Middle School and Ridgedale School testified as to KCS' proposed IEP and placement. At the hearing several KCS staff who have personal knowledge of B.C. testified as both fact and expert witnesses. Dr. Megan Shinaberry and Dr. Kate MacLeod testified on behalf of B.C. However, neither of B.C.'s expert witnesses have any personal knowledge of the situation.

---

[6] As the other staff necessary to protect B.C. during his self-injurious outburst are often engaged in the active support of students, many of them also have to wait for coverage for their students before they can respond to a crisis. This results in a delay of being able to intervene with B.C. and lost instruction time for those other students.

7

37. KCS asserts that the ALJ erred in his decision and Petitioners failed to prove, by a preponderance of the evidence, that KCS did not provide B.C. with an IEP reasonably calculated to provide him with a FAPE pursuant to the IDEA or the ADA and § 504.

38. KCS asserts that the ALJ erred in his decision and Petitioners failed to prove, by a preponderance of the evidence, that B.C.'s LRE is Gibbs Middle School under to the IDEA or the ADA and § 504. Moreover, Petitioners failed to establish that B.C. could be educated "satisfactorily" at Gibbs Middle School or that the supports provided at Ridgedale can "feasibly" be implemented at Gibbs Middle School.

39. KCS asserts that the ALJ erred in his decision and Petitioner failed to prove, by a preponderance of the evidence, that KCS discriminated against B.C. on the basis of his disability in violation of either the ADA or § 504.

40. KCS asserts that ALJ Darnell erred in deciding in favor of B.C. for several reasons:

   i). Several of the factual findings made by the ALJ are not supported by the preponderance of evidence including but not limited to Findings of Fact paragraphs 1-4, 6, 9, 10, 17, 18, 20-22, 26-27, 34, 36-37, 41, 45-46, 49, 50, 54 and 55.

   ii). The ALJ erred in his determination "by a preponderance of the evidence, that KCS's failure to address B.C.'s underlying communication limitations and behavior issues in the school setting denied him FAPE in violation of the IDEA."

   iii). The ALJ erred in his determination that, "by a preponderance of the evidence, that KCS's proposed placement of B.C. at the special day school, Ridgedale, would not educate him in the LRE in violation of the IDEA."

   iv). The ALJ erred in his determination that Petitioners showed, "by a preponderance of the evidence, that KCS was deliberately indifferent to B.C.'s need for behavioral and communication supports and services in violation of the Americans with Disability Act and §

8

504 of the Rehabilitation Act."

v). The ALJ failed to make a determination as to whether KCS followed the IDEA's procedural requirements in developing the proposed IEP for B.C.

vi). The ALJ failed to make a determination as to whether KCS's proposed placement of B.C. at the special day school, Ridgedale was B.C.'s LRE under the ADA or Section 504.

vii). The ALJ failed to make a determination as to whether KCS's proposed IEP would have provided B.C. with FAPE under the ADA or Section 504.

viii). The ALJ failed to make a determination as to whether KCS's proposed IEP would have provided B.C. with FAPE under the IDEA for his 6th grade year.

ix). The ALJ failed to make a determination as to whether B.C. could be educated "satisfactorily" at Gibbs Middle School or that the supports provided at Ridgedale can "feasibly" be implemented at Gibbs Middle School.

x). The ALJ failed to make a determination as to whether B.C. was a "disruptive force" at Gibbs Middle School.

xi). The ALJ improperly relied on testimony from expert witnesses who had little to no first-hand knowledge of B.C., his skill deficits, support needs, behaviors, or the education of students with disabilities.

xii). The ALJ improperly considered evidence that was outside the scope of the issues raised in the due process complaint and/or was outside the timeframe contemplated by the IDEA.

xiii). The ALJ improperly failed to consider the testimony of Knox County staff as to why B.C. cannot be educated satisfactorily at Gibbs Middle School.

xiv). The ALJ improperly failed to consider the testimony of Knox County staff as to placement at Ridgedale School.

Knox County, Tennessee respectfully requests:

1. That this Court reverse the administrative law judge's decision regarding the due process complaint;

2. In the alternative, that this Court receive additional evidence under 20 U.S.C. § 1415(i)(2)(c)(ii) as to the due process complaint;

3. That KCS be granted such equitable and legal relief that is warranted, just and available, including but not limited to reimbursement of costs and expenses accrued as a result of the litigation.

Respectfully submitted.

s/Jessica Jernigan-Johnson
Jessica Jernigan-Johnson
(BPR#032192)
Amanda Lynn Morse (BPR # 032274)
Deputy Law Director
Suite 612, City-County Building
400 Main Street
Knoxville, TN  37902
(865) 215-2327

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was filed electronically on January 5, 2025 on the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

                                                s/Jessica Jernigan-Johnson

                                                Jessica Jernigan-Johnson